**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**

|  |  |  |
|---|---|---|
| IN RE BRADY MARTZ DATA SECURITY LITIGATION | ) ) ) ) ) ) ) | Civil Action No.: 3:23-CV-00176-PEW-ARS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**CONSOLIDATED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

COMPLAINT ALLEGATIONS ..........................................................................................2

LEGAL STANDARD – FED. R. CIV. P. 12(B)(6) ...........................................................3

ARGUMENT .........................................................................................................................4

I.  Negligence (Count I) Has Not Been Sufficiently Pled ............................................4

II.  Negligence Per Se (Count II) Is Not A Recognized Claim Under North
Dakota Law ..............................................................................................................6

III.  Unjust Enrichment (Count III) Has Not Been Plausibly Pled ................................7

    A.  An enrichment unjustly held has not been sufficiently alleged ..................7

    B.  Plaintiffs allege an improper theory of relief .............................................8

IV.  Declaratory Judgment (Count IV) Cannot Be Pursued As Plaintiffs Lack
Standing ....................................................................................................................9

V.  The Mass. Gen. Laws ch. 93A Violation (Count V) Has Not Been
Plausibly Pled ..........................................................................................................11

    A.  Plaintiff Hoffer cannot plausibly meet MCPA, § 11 pleading
requirements ...............................................................................................11

    B.  Plaintiff Hoffer has not plausibly pled MCPA causation ..........................12

VI.  The N.D. Cent. Code § 51-22-02 Violation (Count VI) Has Not Been
Plausibly Pled ..........................................................................................................13

VII.  The CCAC Added A New Plaintiff Without Leave Of Court ..............................16

CONCLUSION.....................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Federal Cases**

*Alleruzzo v. SuperValu, Inc.*,
  925 F.3d 955 (8th Cir. 2019) ...................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................3

*Becker v. N.D. Univ. Sys.*,
  2023 U.S. Dist. LEXIS 3624 (D.N.D. Jan. 9, 2023)................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................3

*In re Brinker Data Incident Litig.*,
  2020 U.S. Dist. LEXIS 247918 (M.D. Fla. Jan. 27, 2020).......4

*Bruton v. City of Grand Forks*,
  2023 U.S. Dist. LEXIS 79322 (D.N.D. May 5, 2023)..............3

*Fabrication v. Parisien*,
  2023 U.S. Dist. LEXIS 82107 (D.N.D. May 10, 2023)............8

*Fero v. Excellus Health Plan, Inc.*,
  236 F. Supp. 3d 735 (W.D.N.Y. 2017) ...................................15

*Ferreira v. Sterling Jewelers, Inc.*,
  130 F. Supp. 3d 471 (D. Mass. 2015) .....................................11

*Flesner v. Bayer AG*,
  596 F.3d 884 (8th Cir. 2010) ...................................................8

*Garnett-Bishop v. N.Y. Cmty., Bancorp, Inc.*,
  2014 U.S. Dist. LEXIS 157806 (E.D.N.Y. Nov. 6, 2014)......16

*Gorog v. Best Buy Co.*,
  760 F.3d 787 (8th Cir. 2014) ...................................................3

*Hall v. Centerspace, LP*,
  2023 U.S. Dist. LEXIS 83438 (D. Minn. May 12, 2023).....9, 10

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992)...................................................................9

*In re Anthem Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ...................................15

*In re Netgain Tech., LLC, Consumer Data Breach Litig.*,
   2022 U.S. Dist. LEXIS 98342 (D. Minn. June 2, 2022) ........................................................6

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) ...................................................................................7

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) .........................................................................................13

*Sierra Club v. Robertson*,
   28 F.3d 753 (8th Cir. 1994) ...................................................................................................9

**State Cases**

*Apache Corp. v. MDU Res. Grp., Inc.*,
   1990 ND 247, 603 N.W.2d 891 ..........................................................................................6, 7

*Bourgois v. Montana-Dakota Utils. Co.*,
   466 N.W.2d 813 (N.D. 1991) ................................................................................................5

*Brandt v. Milbrath*,
   2002 ND 117, 647 N.W.2d 674 ..............................................................................................6

*Inv'rs Real Estate Tr. Props. v. Terra Pac. Midwest, Inc.*,
   2004 ND 167, 686 N.W.2d 140 ..........................................................................................3, 4

*Larson v. Kubisiak*,
   1997 ND 22, 558 N.W.2d 852 ................................................................................................6

*Nelson v. McAlester Fuel Co.*,
   2017 ND 49, 891 N.W.2d 126 ..............................................................................................14

*Rhodes v. AIG Domestic Claims, Inc.*,
   461 Mass. 486, 961 N.E.2d 1067 (2012) ............................................................................11

*Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*,
   2004 ND 117, 680 N.W.2d 634 ..............................................................................................8

**Statutes**

Federal Trade Commission Act, § 5, 15 U.S.C. § 45 ....................................................1, 4, 5, 6

Mass. Gen. Laws Chapter 93A ......................................................................................10, 11

N.D. Cent. Code § 51-22 ........................................................................................1, 12, 13, 14, 15

**Court Rules**

Fed. R. Civ. P. 12(b)(1) ...............................................................................................1, 8, 10

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 3

Fed. R. Civ. P. 15.............................................................................................................15

## INTRODUCTION

Jason Quaife, John Hoffer, Amanda Koffler, Alec Kiesow, and Samantha Stock ("Plaintiffs") have filed a consolidated class action complaint ("CCAC") alleging Brady Martz & Associates, P.C. ("Defendant") negligently managed electronically stored data when it was attacked by cybercriminals. The CCAC alleges six causes of action, each of which should be dismissed.

Count I (negligence) collapses under Fed. R. Civ. P. 12(b)(6) because Plaintiffs have not plausibly pled a duty owed. Plaintiffs' conclusory statements assigning Defendant a duty are (i) inconsistent with the CCAC's factual averments, (ii) lean on insufficient generalizations about Federal Trade Commission ("FTC") guidance and the FTC Act, and (iii) rely on a non-existent "special" relationship.

Count II (negligence per se) disintegrates because North Dakota does not recognize, as an independent cause of action, a common law claim for negligence per se.

Count III (unjust enrichment) fails the plausibility standard of Fed. R. Civ. P. 12(b)(6). Plaintiffs' conclusion that Defendant was unjustly enriched runs contrary to the facts alleged.

Count IV (declaratory judgment) cannot be heard since under Fed. R. Civ. P. 12(b)(1) the Court lacks subject matter jurisdiction; Plaintiffs do not have Article III standing.

Count V (violation of the Massachusetts Consumer Protection Act) crumbles under Fed. R. Civ. P. 12(b)(6) because, *inter alia*, the CCAC admits the conduct alleged substantially occurred in North Dakota, not Massachusetts.

Count VI (violation of N.D. Cent. Code § 51-22-02) evaporates under Fed. R. Civ. P. 12(b)(6) because Defendant has not "disclosed" information in violation of the statute.

Defendant also seeks to dismiss the claims and allegations of Plaintiff Stock. The other Plaintiffs added her to the CCAC in contravention of this Court's order permitting the CCAC.

## COMPLAINT ALLEGATIONS

Defendant is an "accounting, tax, and audit services firm … based in Grand Forks, North Dakota, and operating throughout North Dakota and in northwestern Minnesota."  CCAC ¶ 4.

Defendant was the victim of a cyber attack in late 2022.  CCAC ¶ 4.  As a result of the cybercrime, Plaintiffs allege "unauthorized cybercriminals breached Defendant's information systems and databases and stole vast quantities of PI belonging to Plaintiffs …."  *Id.* ¶ 6.

No Plaintiff dealt directly with Defendant nor retained Defendant's services.  *See, e.g., id.* ¶ 82.  Rather, Plaintiffs' various employers used Defendant's services to assist with the employers' businesses.  As part of those services, the employers provided employee PI to Defendant.  *See, e.g., id.* ¶¶ 71, 104, 108.  Some Plaintiffs do not know how Defendant came to have their PI.  *See, e.g., id.* ¶¶ 82, 86.

Through a written notice program, Defendant informed Plaintiffs that certain of their information provided to Defendant via employers ("PI") may have been affected by the data incident.  *Id.* ¶¶ 4, 11-15.[1]

Plaintiffs allege injury and damages primarily based on theories of negligence springing from supposed lapses in data security and alleged omissions and deception relating to the state of Defendant's data security system.  *See, e.g., id.* ¶¶ 10, 142, 169, 182.

Plaintiffs purport to represent a national class (*id.* ¶ 120) and Plaintiff Hoffer purports to represent a Massachusetts subclass (*id.* ¶ 121).  Plaintiff Stock is newly named in the CCAC.  She was not a named plaintiff in the actions for which Plaintiffs Quaife, Hoffer, Kiesow, and Koffler sought consolidation.  ECF Nos. 7 & 8.

---

[1] Defendant has not identified a "Samantha Stock" as an individual for whom Defendant held PI or sent a notice of the data incident.

## LEGAL STANDARD – FED. R. CIV. P. 12(B)(6)

This Court is well familiar with the "failure to state a claim" standard of Rule 12(b)(6) applied in the light of Rule 8(a):

> Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." But a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right [*6] to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

*Bruton v. City of Grand Forks*, 2023 U.S. Dist. LEXIS 79322, *5-6 (D.N.D. May 5, 2023). Elaborating on the Twombly/Iqbal "plausibility" analysis, a court need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). Thus, a complaint will not endure if it offers only "a formulaic recitation of the elements of a cause of action" or if it "tenders naked assertion[s] devoid of further factual enhancement." *Iqbal* at 678. Where a complaint avers facts "merely consistent with" liability (i.e., they "do not permit the court to infer more than the mere possibility of misconduct") the complaint is to be dismissed. *Id.* at 678-79 (citations omitted).

## ARGUMENT

### I.   Negligence (Count I) Has Not Been Sufficiently Pled

"In a negligence action, the plaintiff has the burden of demonstrating (1) a duty, (2) breach of that duty, (3) causation, and (4) damages." *Inv'rs Real Estate Tr. Props. v. Terra Pac. Midwest, Inc.,* 2004 ND 167, ¶ 7, 686 N.W.2d 140, 144 (citations omitted).  Plaintiffs have not properly pled one of these indispensable elements:  Duty.

Plaintiffs allege Defendant had a duty of care because: (1) Plaintiffs "entrusted Defendant with their PII as a condition of receiving services from Defendant;" (2) Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair … practices in or affecting commerce," which apparently ties to unnamed "FTC publications and data security breach orders [that] form the basis of [a] duty;" and (3) a "special relationship" that supposedly existed between Defendant and Plaintiffs "through close proximity in [Defendant's] business relationship with its financial clients."  *See* CCAC ¶¶ 134, 139, 143.   These "duties" are implausible and/or insufficiently alleged to support the negligence claim.

First, the CCAC does not plausibly support the conclusory allegations that Plaintiffs (i) gave their information to Defendant, or (ii) did so to receive Defendant's services.  CCAC ¶ 134. Plaintiff Hoffer states he is "uncertain of exactly how Defendant came to be in possession of his PI" and "has never directly used Defendant's services." *Id.* ¶ 82.  Similarly, Plaintiff Koffler states she "does not know how Defendant acquired her PI." *Id.* ¶ 86.  Plaintiffs Quaife and Stock gave their PI to their respective employers (not Defendant), and their employers (not Plaintiffs) "retained Defendant's financial services." *Id.* ¶¶ 71, 108. Similarly, Plaintiff Kiesow gave his PI to "Defendant through his employer" but never avers he dealt with Defendant or knew prior to the data incident that his employer used Defendant's services.  These factual allegations in the CCAC

dispel Plaintiffs' legal supposition that Defendant owed them a duty based on a relationship, that in reality, did not exist.

Second, the CCAC, while contending the FTC Act thrusts a legal duty upon Defendant to protect Plaintiffs' data, never identifies how a prohibition of "unfair … practices" translates to a legal duty mandated by the FTC.  *See In re Brinker Data Incident Litig.*, 2020 U.S. Dist. LEXIS 247918, *29-30 (M.D. Fla. Jan. 27, 2020).  In *Brinker,* the district court denied a request to maintain a data breach negligence claim premised on the breach of a duty allegedly created by the FTC Act.  Specifically, the court concluded (at *30 (emphasis in original)):

> Plaintiffs allege [Defendant] failed to comply with FTC "guidelines" and "recommendations," not any specific duty of reasonable care <u>mandated</u> by the FTC Act.  Therefore, Plaintiffs should not be able to premise its breach of a duty solely on Brinker's alleged violation of the FTC Act.

Similarly, Plaintiffs summarily note FTC "guidelines" and what the FTC "recommends" businesses do to fight cybercrime.  *See* CCAC ¶¶ 36-38.  Equally ambiguous, Plaintiffs mention unnamed FTC proceedings against unnamed entities without detailing the relevant facts and law involved in those matters or their applicability to Defendant's business practices and the cyber incident here.  These generalized allegations do not connote a duty of care mandated by the FTC Act that Plaintiffs could use as the foundation for a negligence claim.  *Cf. Alleruzzo v. SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir. 2019) (rejecting, under Illinois law, contention that FTC Act, Section 5, creates an enforceable duty of care).

Third, Plaintiffs provide no basis to infer they and Defendant had a special relationship simply because their employers used Defendant for "financial services."  CCAC ¶ 143.  Defendant is not aware of North Dakota courts recognizing a special relationship predicated on such attenuated relations.  Moreover, a "special relationship does not ordinarily exist when business

persons deal with each other at arm's length."  *Bourgois v. Montana-Dakota Utils. Co.,* 466 N.W.2d 813, 819 (N.D. 1991).  Plaintiffs do not allege other than arm's length dealings.  And since no special relationship existed between the employers and Defendant, how could that relationship exist between Plaintiffs and Defendant?  Plaintiffs were a step removed from Defendant's services and concede they didn't deal directly, if at all, with Defendant.  *See* CCAC ¶ 82.

Plaintiffs also contend a "special relationship arose because Plaintiffs … entrusted Defendant with their confidential PI, a necessary part of obtaining services from Defendant." *Id.* ¶ 143.  As discussed, *supra*, that argument has no legs; it is incongruent with the facts alleged.  The cause of action should be dismissed for lack of plausibility.

## II.   Negligence Per Se (Count II) Is Not A Recognized Claim Under North Dakota Law

There is no private right of action recognized in North Dakota for negligence per se.  *See, e.g., Brandt v. Milbrath,* 2002 ND 117, ¶ 31, 647 N.W.2d 674, 682 ("The alleged violation of a statutory duty is evidence of negligence, not negligence per se under North Dakota law"); *Larson v. Kubisiak,* 1997 ND 22, ¶ 8, 558 N.W.2d 852 (citing cases noting North Dakota's "well-established case law that the violation of a statutory duty is evidence of negligence and not negligence per se").

Further, Plaintiffs predicate their negligence per se claim on a supposed violation of Section 5 of the FTC Act.  CCAC ¶¶ 155-157.  The FTC Act, however, does not afford a private right of action and cannot support a negligence per se claim.  *See In re Netgain Tech., LLC, Consumer Data Breach Litig.,* 2022 U.S. Dist. LEXIS 98342, *42 (D. Minn. June 2, 2022) (noting FTC Act does not provide a private right of action and that the plaintiffs did not cite precedent permitting "a state-law negligence *per se* claim to proceed based on a theory that there is a violation of Section 5 of the FTC Act.").  This cause of action should be dismissed with prejudice.

### III.    Unjust Enrichment (Count III) Has Not Been Plausibly Pled

To prove unjust enrichment, a party must show (1) defendant was enriched, (2) plaintiff was impoverished, (3) causal connection between enrichment and impoverishment, (4) the enrichment and impoverishment were unjustified, and (5) absence of a remedy provided at law. *See Apache Corp. v. MDU Res. Grp., Inc.,* 1990 ND 247, ¶ 13, 603 N.W.2d 891, 894-95.  Plaintiffs have not plausibly alleged that Defendant was enriched unjustly.  Further, Plaintiffs' unjust enrichment theory of damages is improper.

### A.    *An enrichment unjustly held has not been sufficiently alleged*

Plaintiffs' unjust enrichment claim boils down to the following.  "Plaintiffs … conferred a monetary benefit upon Defendant in the form of monies paid to Defendant for services."  CCAC ¶ 165.  "The monies paid … were to be used by Defendant, in part, to pay for the administrative costs of reasonable data privacy[.]"  *Id.* ¶ 167.  "Defendant should not be permitted to retain the money belonging to Plaintiffs … because Defendant failed to implement … the data privacy and security practices and procedures that Plaintiffs and Class members paid for[.]"  *Id.* ¶ 173. This theory cannot stand for at least two reasons.

<u>First</u>, Plaintiffs' assertion that Defendant was unjustly enriched by retaining money Plaintiffs gave to Defendant is a fiction contradicted by the CCAC's averments.  Plaintiffs do not allege they did business with Defendant.  Instead, they allege they gave their information to their employers who then gave it to Defendant so that Defendant could perform certain accounting, tax, and audit services for those employers.  *See id.* ¶¶ 1, 2, 71, 104, 108, 113.  Plaintiffs were not a party to these service relationships, did not pay for them, and as Plaintiff Hoffer admits, "has never directly used Defendant's services."  *Id.* ¶ 82.

<u>Second</u>,  Plaintiffs' theory of loss is nonsensical.  Plaintiffs claim that "part" of the money Defendant received for services was to be used to "pay for" data security.  CCAC ¶ 167.  Yet Plaintiffs do not allege that others who received the same services from Defendant but did not provide the same type or level of personal information to Defendant paid less for those services. As such, even if Plaintiffs had paid dollars to Defendant, they did not pay extra for data security. *Cf. In re Target Corp. Customer Data Sec. Breach Litig.,* 66 F. Supp. 3d- 1154, 1178 (D. Minn. 2014) ("the fact that all customers regardless of payment method pay the same price renders Plaintiffs' overcharge theory implausible").  Accordingly, Defendant could not have unjustly kept money reserved for data security because that money was never paid (let alone by Plaintiffs). Plaintiffs' impoverishment and enrichment contentions are wholly conclusory and lack a factual foundation.  The Court should reject them and, therefore, the cause of action too.[2]

### B.   *Plaintiffs allege an improper theory of relief*

Even if the enrichment, impoverishment, and unjust retention of benefit elements of this cause of action had been properly pled, Plaintiffs' theory of damages cannot stand.  Plaintiffs allege they have suffered "actual damages" in an amount calculated as the difference between the value of their personal information prior to and after the breach.  CCAC ¶ 172.  Damages under an unjust enrichment theory, however, "should be based on the defendant's enrichment or the value of the benefit received."  *Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 26, 680

---

[2] To the extent the CCAC is attempting to suggest Defendant unjustly benefitted from the receipt of Plaintiffs' information by using it in the "course of [Defendant's] business" (CCAC ¶ 166), the allegation also fails.  Plaintiffs concede their PI was provided to Defendant so that Defendant could perform services for their employers in exchange for money.  The CCAC does not allege Defendant failed to perform those services or that the employers received less than the benefit of their bargain.  Thus, Defendant justly retained amounts received for its services. *See, e.g., Flesner v. Bayer AG,* 596 F.3d 884, 892 (8th Cir. 2010) (no unjust enrichment where party "received the benefit of his bargain").

N.W.2d 634.  Accordingly, the damages averment is flawed and Plaintiffs' request for "actual damages" condemns the cause of action to dismissal.

## IV.    Declaratory Judgment (Count IV) Cannot Be Pursued As Plaintiffs Lack Standing

Federal Rule of Civil Procedure 12(b)(1) "requires dismissal if the court lacks subject matter jurisdiction over a claim." *Fabrication v. Parisien,* 2023 U.S. Dist. LEXIS 82107, *4 (D.N.D. May 10, 2023).  Thus, a "federal court 'must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments' in each case." *Id.* at *4 (citation omitted).  "To invoke subject matter jurisdiction in federal court, a plaintiff must have Article III standing." *Becker v. N.D. Univ. Sys.,* 2023 U.S. Dist. LEXIS 3624, *6 (D.N.D. Jan. 9, 2023).

As such, "courts in data breach cases have considered whether plaintiffs have standing to seek injunctive and declaratory relief." *Hall v. Centerspace, LP*, 2023 U.S. Dist. LEXIS 83438, *8 (D. Minn. May 12, 2023) (citation omitted).  Critical to the standing analysis is "injury in fact." To establish Article III standing, a plaintiff, among other elements, "must show … an injury in fact." *Becker,* 2023 U.S. Dist. LEXIS 3624, at *6.  An injury in fact requires "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) ***actual and imminent***, not conjectural or hypothetical." *Id.* (quoting *Sierra Club v. Robertson,* 28 F.3d 753, 758 (8th Cir. 1994) (emphasis added)).  Regarding the "actual or imminent" requirement, this Court has stated:

> [T]he Supreme Court has opined that "'some day' intentions – without any description of concrete plans, or indeed even any specification of <u>when</u> the some day will be" are insufficient.  *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 564 (1992).  As such, "[a]ssertions of <u>potential </u>future injury do not satisfy the injury-in-fact test." *Id.* (emphasis added).

*Becker*, 2023 U.S. Dist. LEXIS 3625, at *7.  Here, Plaintiffs have not suffered an injury in fact and do not have standing to pursue declaratory relief.

The CCAC alleges Plaintiffs "are at risk of harm due to the exposure of their PI and Defendant's failure to address the security failings that led to such exposure."  CCAC ¶ 179. Plaintiffs add they have an "interest in ensuring that their PI, which is believed to remain in the possession of Defendant, is protected from further breaches by implementation of security measures and safeguards[.]"  *Id.* ¶ 68.  Plaintiffs, therefore, seek relief requiring "Defendant to implement and maintain reasonable security measures[.]"  *Id.* ¶ 180.

District courts in the Eighth Circuit, applying Federal Rule of Civil Procedure 12(b)(1), do not permit such "forward-looking" claims in data breach cases.  For instance, In *Thomas v. Pawn America Minn., LLC,* the court dismissed the plaintiffs' claims for injunctive and declaratory relief:

> Plaintiffs seek injunctive and declaratory relief to force [def.] to implement various data-security measures to ensure that, going forward, [def.] "adequately safeguards" plaintiffs' data. To establish standing for this forward-looking relief, plaintiffs must allege a "sufficiently imminent and substantial" risk of harm that would be avoided if the sought-after relief was granted. Plaintiffs have not done so.
>
> The only harm that would be redressed by plaintiffs' proposed injunction and declaration is the harm that would be caused by a *future* breach of [def.'s] computer network. It is certainly possible [def.] will suffer a second breach … and certainly possible plaintiffs will be harmed if a second breach occurs …. But the law requires not just possibility but *imminence*. Nothing alleged in the complaint indicates that a second breach … is imminent. Rather, plaintiffs allege only that they "have an interest in ensuring that their [private information], which is believed to remain in the possession of [def.], is protected from further breaches." True enough, but every human being has an interest in ensuring that any entity that possesses his or her private information keeps that information safe. The universal interest in the security of one's private data does not equate to a substantial and imminent risk of harm.

2022 U.S. Dist. LEXIS 140107, *7-9 (D. Minn. Aug. 8, 2022) (emphasis in original) (citations omitted). Here, the CCAC's allegations *are identical* to those rejected in *Pawn America. See* CCAC ¶ 68. For the reasons expressed in *Pawn America*, including the absence of an injury in fact, Plaintiffs' claims for injunctive relief and declaratory judgment should be dismissed. *See also Hall*, 2023 U.S. Dist. LEXIS 83438, at *7-13 (adopting reasoning of *Pawn America* and dismissing claims in data breach action for declaratory and injunctive relief).

## V. The Mass. Gen. Laws ch. 93A Violation (Count V) Has Not Been Plausibly Pled

Plaintiff Hoffer, on behalf of himself and a putative Massachusetts subclass, attempts to assert a Massachusetts Consumer Protection Act, Gen Laws ch. 93A ("MCPA") claim against Defendant based on supposed deception and unfairness. *See* CCAC ¶¶ 121, 182-185. The pleading is insufficient.

### A. *Plaintiff Hoffer cannot plausibly meet MCPA, § 11 pleading requirements*

The MCPA claim fails because it is not based on unfair or deceptive practices that "occurred primarily and substantially within the commonwealth [of Massachusetts]." Mass. Gen Laws ch. 93A, § 11 ("No action shall be brought … unless the [conduct] … occurred primarily and substantially …."). The CCAC admits a "substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District [North Dakota], and Defendant resides within this judicial district." CCAC ¶ 19. If a "substantial" portion of the alleged conduct took place in North Dakota, it is not plausible that the acts complained of also "substantially" occurred in Massachusetts. The CCAC does not allege Defendant directed the alleged conduct toward Massachusetts, but instead states Defendant resides in North Dakota, has its principal place of business in Grand Forks, and operates "throughout North Dakota and in

northwestern Minnesota." *Id.* ¶¶ 1, 16, 18, 19,   Massachusetts is 1,600+ miles from North Dakota. The claim does not comply with the requirements of Massachusetts law and fails on that basis.

B. ***Plaintiff Hoffer has not plausibly pled MCPA causation***

To adequately allege causation under the MCPA, a "plaintiff is required to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss." *Rhodes v. AIG Domestic Claims, Inc.,* 461 Mass. 486, 496, 961 N.E.2d 1067, 1076 (2012).  In other words, "Chapter 93A requires proof of 'but for' causation and proximate causation." *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 484 (D. Mass. 2015).

Here, Plaintiffs allege: "But for Defendant's willingness and commitment to maintain privacy and confidentiality, [Plaintiffs'] PI would not have been transferred to and entrusted with Defendant." CCAC ¶ 169.  In that vein, Plaintiffs claim Defendant acted unfairly and deceptively under the MCPA by "soliciting and collecting … PI with knowledge that that information would not be adequately protected" (*id.* ¶ 182), which dovetails with the further contention that through "Defendant's acts and omissions described in the Complaint," Defendant violated duties to Plaintiffs (*id.* ¶ 142).  *See also id.* ¶ 10 (seeking relief for the consequences of "Defendant's … intentionally and unconscionably deceiving Plaintiffs … concerning the status, safety, location, access, and protection of their PI.").  In short, Hoffer and the other Plaintiffs allege Defendant caused them to allow their PI to be given to Defendant because of empty commitments, factual omissions and acts otherwise "deceiving Plaintiffs." *Id.* ¶¶ 10, 169.

Yet Plaintiff Hoffer cannot be heard to complain Defendant's conduct caused him losses. Contrary to the CCAC's conclusory allegations of deception and unfair practices perpetrated against Plaintiffs, Mr. Hoffer admits he is "uncertain of exactly how Defendant" came to have his information and he has "never" directly used Defendant's accounting, tax, or any other service.

*Id.* ¶ 82.  The lack of "but for" causation between Defendant's alleged conduct and the CCAC's lone Massachusetts plaintiff (Hoffer) is an additional, independent ground to dismiss the MCPA claim.  *Cf. In re TJX Cos. Retail Sec. Breach Litig.,* 246 F.R.D. 389, 398 (D. Mass. 2007) (denying certification of class alleging 93A claim based on data incident and noting that in some cases, including the one before the court in which Defendant allegedly made misrepresentations, "reliance constitutes an 'essential link' in the chain of causation that does have to be proven under Chapter 93A" (citation omitted)).[3]

## VI.   The N.D. Cent. Code § 51-22-02 Violation (Count VI) Has Not Been Plausibly Pled

The Complaint purports to assert a claim for relief under N.D. Cent. Code § 51-22-02. CCAC ¶¶ 186-191.  The statute, however, does not provide a cause of action where, as alleged here, "cybercriminals breached Defendant's information systems … and stole" Plaintiffs' PI.  *Id.* ¶ 6.  *See also id.* ¶ 12 ("cyber criminals" took PI), ¶ 51 ("unauthorized access" to PI), ¶ 77 (Plaintiff Quaife claiming "thieves stole his PI"); ¶ 94 (Plaintiff Koffler averring same for her data); ¶ 104 (Plaintiff Kiesow claiming "thieves stole his PI"); ¶ 116 (Plaintiff Stock alleging same).

Instead, the statute prohibits businesses from "disclosure" of a "record" to a third party except when the business's disclosure is performed with consent or pursuant to legal process or rule.  Stated differently, N.D. Cent. Code § 51-22-02 governs intentional disclosures by business entities, not nonconsensual theft by cyberthieves.

In relevant part, N.D. Cent. Code § 51-22-02(1) reads (emphasis added):

No business entity which charges a fee for data processing services performed
**may disclose** … the contents of any record, including the **disclosure** of

---

[3] Plaintiffs also seek declaratory and injunctive relief under this claim.  CCAC ¶ 185.  For the reasons stated in Defendant's motion to dismiss Count IV, *supra,* the requested declaratory and injunctive relief under Count V also should be dismissed.

> information contained in the record … to any person, other than the individual
> or business entity which is the subject of the record, without express written
> consent ….

Excepted from this prohibition is a business entity's "disclosure" of a record pursuant to a

subpoena, court order, search warrant, or the N.D. Rules of Civil Procedure.  *Id.* § 51-22-02(2).

The statute does not define a "disclosure."  However, Black's Law Dictionary ("Black's")

defines "disclosure" as "[t]he act or process of making known something that was previously

unknown; a revelation of facts."  Black's 531 (9th ed. 2009).  In turn, Black's defines "act" as

"[s]omething done or performed, esp. voluntarily." *Id.*  at 27.  Disclosure requires an affirmative

and voluntary act.  As such, Defendant did not make a "disclosure" of Plaintiffs' information when

cyberthieves, according to Plaintiffs, stole that information.  *See* CCAC ¶¶ 77, 94, 104, 116.

The structure of N.D. Cent. Code §§ 51-22 and case law support this interpretation.  S.B.

2051, the legislative bill that became law, declares the act is to "prohibit disclosure by any business

entity …. except upon written consent[.]"  *See* Data Processing Information Confidentiality Act,

S. 2051, 47th Leg., ch. 500, § 1 (approved Marh 19, 1981).  The statute defines entities and

documents subject to the act (§ 51-22-01), then states the limited circumstances when a business

"may disclose" a record (§ 51-22-02), and concludes with the repercussions, i.e., civil exposure, a

business can face if it drifts away from the disclosure safe harbor (§ 51-22-03).  If the statute was

intended to punish any publication of information, whether voluntarily made or through

unauthorized procurement, the Legislature would have worded it accordingly.

To interpret the statute as exposing a business entity to liability when a record is stolen or

otherwise unlawfully accessed by unauthorized persons would create "an absurd or ludicrous result

or unjust consequences."  *Nelson v. McAlester Fuel Co.,* 2017 ND 49, ¶ 12, 891 N.W.2d 126, 130

(citation omitted).  Principles of statutory construction, however, bar such interpretation and direct

courts to examine statutes in a "practical manner" considering the "context of the statutes and the purposes for which they were enacted." *Id.* A practical construction favors the assignment of liability under the statute only when a business willfully discloses information.

Defendant has not identified caselaw addressing N.D. Cent. Code §§ 51-22-02 or its other sections but courts considering the applicability of privacy statutes have reached similar conclusions: Disclosure is an affirmative act. In *In re Anthem Data Breach Litig.*, the court considered whether the Georgia Insurance Information and Privacy Act ("IIPA") applied to an alleged data breach. 162 F. Supp. 3d 953, 1002-03 (N.D. Cal. 2016). The *Anthem* court noted the statute prohibited disclosure of "privileged information" unless the disclosure fell under an enumerated set of exceptions. *Id.* The court also noted the statute did not define "disclosure" and applied the plain meaning of the term concluding that it was "unlikely that the Georgia Legislature intended for 'disclosure' to encompass instances of third party cyberhacking and data breach." *Id.* The *Anthem* court then examined how courts dealing with breach claims have defined the term "disclosure" as used in the Federal Privacy Act. *Id.* at 1003-04. Those courts restricted the definition of "disclosure" to "situations where information holders have **willfully** provided data to an unauthorized third party." *Id.* (emphasis added). Similarly, the *Anthem* court ultimately interpreted "disclosure" to mean "**an active, voluntary decision by the information holder to provide data** to an unauthorized third party." *Id.* at 1004 (emphasis added).[4]

The CCAC makes clear Defendant did not affirmatively disclose the subject information; rather, the information was accessed illegally. *See, e.g.,* CCAC ¶ 6. That scenario does not fall

---

[4] *See also Fero v. Excellus Health Plan, Inc*., 236 F. Supp. 3d 735, 784 (W.D.N.Y. 2017) (considering North Carolina and New Jersey privacy statutes and concluding "disclosure does not encompass a theft").

within the ambit of N.D. Cent. Code §§ 51-22-02 and Count VI, therefore, should be dismissed with prejudice.

## VII.   The CCAC Added A New Plaintiff Without Leave Of Court

On or around October 16, 2023, Plaintiffs Quaife, Hoffer, Koffler, and Kiesow each filed a motion with a supporting memorandum to consolidate their four class actions into a consolidated case against Defendant.  *See, e.g.,* ECF Nos. 7 & 8.   The proposed order attached to the memorandum in support of each motion requested the four plaintiffs be allowed to file a consolidated class action complaint.  *See, e.g.,* ECF No. 8.  On October 19, 2023, the Court granted the motion to consolidate the actions and granted the four plaintiffs' request "to file a consolidated complaint in the lead case."  ECF No. 11 at 3.  In filing the motion the four plaintiffs did not request leave to add a new plaintiff via the CCAC (nor did they notify Defendant of their intention).

On November 20, 2023, the four plaintiffs filed the CCAC and added a new, previously unidentified plaintiff, Samantha Stock, and included allegations unique to her.  Plaintiffs added Ms. Stock without leave of Court.  This was improper and the new plaintiff should be dismissed. *See, e.g., Garnett-Bishop v. N.Y. Cmty., Bancorp, Inc.*, 2014 U.S. Dist. LEXIS 157806, *18-20 (E.D.N.Y. Nov. 6, 2014) (dismissing plaintiffs improperly added to consolidated complaint).  If the four plaintiffs wish to try to amend to add Ms. Stock and her allegations, they should do so via Fed. R. Civ. P. 15 motion.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the CCAC with prejudice.

Date: December 28, 2023

By:     */s/ Tina A. Syring*
       Tina A. Syring, Bar ID. 05201
       Hattie Miller, Bar ID. 09665
       **LEWIS BRISBOIS BISGAARD & SMITH LLP**
       90 S 7th Street, Suite 2800
       Minneapolis, MN 55402
       Tel.: 612.428.5032
       Fax: 612.428.5001
       Tina A. Syring@lewisbrisbois.com
       Hattie.Miller@lewisbrisbois.com

       *Counsel for Defendant*
       *Brady Martz & Associates, P.C.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure on December 28, 2023, *via CM/ECF*, on counsel of record.

<u>*/s/ Tina A. Syring*</u>
Tina A. Syring