UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| **In re Brady Martz Data Security Litigation** | Case No. 3:23-cv-176-PDW-ARS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN** |

Plaintiffs Jason Quaife, John Hoffer, Amanda Koffler, Alec R. Kiesow, and Samantha Stock ("Plaintiffs" or "Class Representatives"), and the class they represent (the "Class") have reached a nationwide class action settlement with Defendant, Brady, Martz & Associates, P.C., for an $850,000 non-reversionary common fund to resolve claims arising from the data breach reported on or around June 16, 2021 (the "Data Incident"). *See* Declaration of David A. Goodwin in Support of Preliminary Approval of Class Action Settlement ("Goodwin Decl."), Settlement Agreement, Ex. 4. The Settlement provides significant relief to Settlement Class Members and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Fed. R. Civ. P. 23(e). The Court should, therefore, preliminarily approve the Settlement, direct that notice be sent to all Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for service award, attorneys' fees, costs, and set a date for the Final Approval Hearing.

1

I. **Background**

    A. **History of Litigation**

On November 20, 2023, Plaintiffs in four different actions consolidated their complaints against Defendant, alleging that Defendant was liable for the following claims stemming from Defendant's failure to protect Plaintiffs' and Class Member's Private Information in the Data Breach: (1) negligence; (2) negligence per se; (3) unjust enrichment; (4) violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93a § 1 *et seq*; and (5) violation of N.D. Cent. Code § 51-22-02. Consolidated Compl., ECF No. 15. Specifically, Plaintiffs alleged that Defendant, an accounting, tax, and audit services firm, failed to properly protect and preserve the highly sensitive private information, including, but not limited to, names, addresses, phone numbers, social security numbers, driver's license numbers, medical information, and health insurance information of its customers. *See generally* ECF No. 15. Defendant filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. ECF No. 20. The Court denied that motion as to Plaintiffs' negligence claim and request for declaratory judgment and granted it as to the rest. ECF No. 36.

    B. **Negotiations and Settlement**

In November 2023, the Parties began to discuss an early resolution to this case. These discussions became 11 months of intense good faith, arms'-length negotiations between the Parties and their respective counsel. The Parties continued to litigate this dispute during the negotiation period, including a motion to dismiss and informal discovery. Discovery included service of discovery requests, discovery responses, scheduling depositions, and a meet-and-confer to discuss the discovery responses. On October 15, 2024, the Parties' extended settlement negotiations

resulted in an agreement in principle to settle the Action. The Parties memorialized their agreements in the Settlement Agreement.

### C. Settlement Summary

Under the proposed Settlement, Defendant will pay $850,000 to establish the Settlement Fund to be distributed to Class Members pursuant to the Settlement Agreement.

The Settlement defines the Settlement Class as:

> All individuals in the United States who were sent a notification letter regarding the Data Incident Brady Martz discovered in November 2022. Excluded from the Settlement Class are Brady Martz, the Judge assigned to the Action, and that Judge's immediate family and Court staff, and also Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

Goodwin Decl., Ex. 4 at ¶ 1.48. It is estimated that the Class is comprised of approximately 58,500 individuals nationwide. *Id.* Under the Proposed Settlement, Defendant agrees to pay a total of $850,000 into the Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Settlement Administration, attorneys' fees and expenses, and a Service Awards to Plaintiffs. *See generally* Goodwin Decl., Ex. 4.

#### i. Compensation

The Settlement Fund provides an estimated $75 (subject to a pro-rata increase or decrease) payment to each Class Member upon submission of a claim form. *Id.* at ¶2.2(a). Defendant will provide compensation for unreimbursed ordinary losses and unreimbursed extraordinary losses as detailed below:

<u>Compensation for Ordinary Losses</u>: From the Settlement Fund, the Class Members may seek compensation for unreimbursed losses and/or lost time, up to a total of $250 per person, upon submission of a Claim Form and supporting documentation, and loss time with no documentation, such as the following categories of claimed losses:

- Out-of-pocket expenses incurred as a result of the Data Breach, including documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charge based on the amount of data used), postage, or gasoline for local travel, all of which must be fairly traceable to the Data Breach, must not have been previously reimbursed by a third party, and that are supported by documentation or sworn attestation that substantiated the full extent of the amount claimed; and

- Up to 4 hours of lost time at $25/hour

*Id.* at ¶ 2.2(b).

Compensation for Extraordinary Losses: From the Settlement Fund, Class Members may seek up to $5,000 in compensation to each Claimant for proven monetary loss if: (1) the loss is an actual, documented, and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred during a specified time period; and (4) the loss is not already covered by the Compensation for Ordinary Losses and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* at 2.2(c).

To the extent any of the Settlement Fund remains after the deduction of settlement administration costs, Class Counsel's attorneys' fees and expenses, the Class Representative Service Award, valid Extraordinary Loss claims and Ordinary Loss claims under the Settlement, a pro rata increase or decrease of approximately $75 cash payments will be made to those Class Members submitting valid claims for such relief. *Id.* at ¶ 2.3(c).

Based on Class Counsel's experience in other data breach class action cases, it is expected that Class Members submitting valid claims under the Settlement will likely receive a slight pro rata increases to the cash payments they receive under the Settlement, which will be based on the overall claims rate made by Class Members.

4

### ii. Scope of the Release

In exchange for consideration above, Plaintiffs and Class Members who do not timely and validly excuse themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Breach at issue in this litigation. *Id.* at ¶ 4.3. The Settlement's finality is not dependent on the Court awarding attorneys' fees and expenses to Class Counsel. *Id.* at ¶ 7.6. The scope of the release is defined as follows:

> Upon the Effective Date, the Releasors shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims,[1] including Unknown Claims, as against Defendant and other Released Parties. Further, upon the Effective Date, and to the fullest extent permitted by law, each Participating Settlement Class Member, including Plaintiffs, shall either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined form commencing an action, prosecuting an action, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims are asserted against any of the Released Parties.

*Id.* at ¶ 6.1.

### iii. Notice and Administration Plans

Pursuant to ¶ 1.46 of the Settlement Agreement, Class Counsel, with Brady Martz's approval, has selected Analytics, LLC ("Analytics") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. Defendant, with the assistance of the Settlement Administrator, shall create a "class list" of all names, and/or mailing addresses of potential Settlement Class Members. *Id.* at ¶ 1.8. Class Counsel's decision to select Analytics was based on the scope of settlement administration Analytics proposed balanced against the cost for

---

[1] "Released Claims" are defined in the Settlement Agreement (¶ 1.42) and related only to claims "concerning or arising out of the Data Incident or the allegations, transactions, occurrences, operative facts, or circumstances alleged in or otherwise described in the Complaint or otherwise asserted in the Action."

such services. Goodwin Decl., ¶ 13. Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select the settlement administrator for this case offering the best service for the best price. *Id.* at ¶ 13.

Analytics will first provide a short form notice via postcard that will be mailed to each available Class Member maintained on the Class List. Goodwin Decl., Ex. 4 at ¶ 3.3(d). The short form notice plainly and concisely informs Class Members of the amount of the Settlement Fund, that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a claim form and be bound by the Goodwin Decl., Ex. 1. It will also publish a long-form notice on a website established and administered by the Settlement Administrator, which shall contain information about the Settlement, including copies of the notice, the Settlement Agreement, and all court documents relevant to the Settlement. Goodwin Decl., Ex. 4 at ¶¶ 1.52, 3.3(c).

Analytics will also be responsible for accounting for all of the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Fund directly to Class Members. *Id.* at ¶ 2.3.

### iv. Attorneys' Fees and Expenses.

Plaintiffs will also separately seek an award of attorneys' fees not to exceed 33.33% of the Settlement Fund (*i.e.*, $283,333.33), and for reimbursement of their reasonable costs and litigation expenses incurred not to exceed $5,000, which shall be paid from the Settlement Fund. *Id.*, ¶ 7. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. *Id.* ¶ 7.1. Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding attorney fees of 36% from a $3.5 million common fund); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th

Cir. 2017) (observing that "courts have frequently awarded attorneys' fees ranging up to 36% in class action" and affirming award of 38% of the net settlement fund); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017) (approving attorneys' fee award of 1/3 totaling $20 million from the common fund); *Phillips v. Caliber Home Loans, Inc.*, No. 19-CV-2711, 2022 WL 832085, at *7 (D. Minn. Mar. 21, 2022) (awarding 1/3 of $5,000,000 non-reversionary common fund).

      v.  **Service Award to Plaintiffs.**

The Settlement Agreement provides for a payment of $2,000 to each of the Class Representatives for their services in representing the Class. *Id.* at ¶ 7.4. "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri*, 855 F.3d at 867 (approving $10,000 service awards to each class representative). "[C]ourts in this Circuit regularly grant service awards of $10,000 or greater." *Id.*; *see also Lutz v. Electromed, Inc.*, No. 21-cv-2198 (KMM/DTS), 2023 WL 4362813, at *1 (D. Minn. July 6, 2023) (approving $10,000 service award for named plaintiff in data breach class action). Plaintiffs could have simply awaited the outcome of this litigation and may have received the same benefits as any other Class Member. However, if no one had done so, there would be no benefits whatsoever. Instead, Plaintiffs led this litigation and vigorously represented the interests of all Class Members. Plaintiffs remained committed to and actively participated in this litigation against a formidable Defendant on behalf of a large group of Class Members. Goodwin Decl. at ¶ 17. As such, a Service Award for the proposed Class Representatives in the amount of $2,000 is appropriate.

**II.     Discussion**

    **A. Legal Standard**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial review of a proposed class action settlement is well established: "As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-cv-1108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004)); *see In re CenturyLink Sales Practices and Securities Litig.*, No. 17-2795, 2020 WL 7133805, at *2–3 (D. Minn. Dec. 4, 2020). Importantly,

> [b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] [c]ourt need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls "within the range of possible judicial approval."

*In re M.L. Stern Overtime Litig.*, No. 07- cv-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (quoting 1 *Newberg*, § 11.25); *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) ("At the preliminary approval stage, the fair, reasonable, and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." (emphasis in original) (quotation omitted)).

Courts consider four factors in determining whether a proposed settlement is fair, reasonable, and adequate for purposes of final approval: (1) the merits of plaintiffs' case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and

expense of further litigation; and (4) the amount of opposition to the settlement. 3 *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932–33 (8th Cir. 2005) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988); *Hanson v. Acceleration Life Ins. Co.*, No. CIV A3-97-152, 2000 WL 33340298, at *3 (D.N.D. June 21, 2000)

Moreover, courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arms-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. Civ. A.99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476–77 (D. Minn. 1993). "The court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993); *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel). Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement, as occurred here. *See, e.g.*, *In re Employee Benefit Plans*, 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements").

### B. The proposed settlement satisfies the standard for preliminary approval.

As a matter of public policy, settlement is a strongly favored mechanism for resolving disputed claims. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, there is an overriding public interest in favor of settlement." *Yarrington v.*

9

*Solvay Pharms., Inc.*, No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553, at *6 (D. Minn. Mar. 16, 2010) (quotations omitted). As the court stated in *Dekro v. Stern Brothers & Co.*, "[s]ettlement is the preferred method for the disposition of complex litigation." 571 F. Supp. 97, 101 (W.D. Mo. 1983). At the preliminary approval stage, "the fair, reasonable, and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383.

The merits of Plaintiffs' case weighed against the settlement terms. The fact that Settlement Class Members will receive cash relief across broad categories of damages reflects the strength of Plaintiffs' liability case. If settlement was not obtained, the Parties would have engaged in extensive discovery. Plaintiffs would have moved for class certification under Rule 23 and then summary judgment. Defendant would have contested both motions. If Defendant had prevailed on class certification, Plaintiffs' recoveries would be limited solely to their damages, or a small fraction of the current Settlement Fund.

As it stands, the Settlement provides significant benefits to the Settlement Class, especially in light of possible defenses. The $850,000 Settlement Fund represents an excellent result and provides monetary relief for *all* Settlement Class Members.

Defendant's financial condition. Because the settlement is appropriate on the merits of the case and is not reduced to account for any collectability concerns, the Parties did not evaluate Defendant's solvency. Thus, this is a neutral factor. To the extent relevant, Defendant had insurance that would cover the claims in this case. There is no concern that Defendant will be unable to pay the full amount of the Settlement Fund.

The complexity and expense of further litigation. Preparing for a contested trial would involve considerable expense. Goodwin Decl. at ¶ 18. Similarly, the trial presentation establishing

liability would also be heavily expert-driven. *Id.* For these reasons, Settlement Class Counsel urge the Court to find that the proposed Settlement is within the range of reasonableness warranting notice to Class Members and should be preliminarily approved.

Amount of opposition to the settlement. The Court will be in a better position to fully analyze this factor after notice issues and Class Members have had the opportunity to opt out or object to the Settlement. Thus, this factor is to be determined at final approval and does not preclude preliminary approval at this stage.

The settlement was the result of an arm's length negotiation. A proposed settlement that is the result of arm's length negotiations by class counsel is presumptively fair and reasonable. *See* 1 *Newberg* § 11.41 at 90; *Grove v. Principal Mut. Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001). In this case, settlement was achieved at arm's length through informal discovery and extensive settlement negotiations between counsel.

### i. The proposed notice program is adequate.

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed settlement. *See Manual for Complex Litig.* §§ 21.312, 21.631 (4th ed. 2011). Settlement notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin*, 513 F.2d at 121). Notice need not provide "a complete source of information" or an exact amount of recovery for each class member. *Id.* (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). The best notice practicable under the circumstances means "individual notice to all members who can be identified

through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice. *Id.* at 176.

Counsel for the Settlement Class have hired a highly experienced and well-regarded class action notice and administration firm, Analytics. Declaration of Richard Simmons ("Analytics Decl."). Richard Simmons, Founder and Principal of Analytics, has over 30 years of experience in class action settlement administration. *Id.* at ¶ 5. In his opinion, the Notice Plan "will satisfy Fed. R. Civ. P. 23 and provide due process for members of the proposed Settlement Class. In my opinion, the Notice Program described herein is the best practicable notice under the circumstances and fulfills all due process requirements." *Id.* at ¶ 11. Copies of the Notices and Claim Form are attached to Declaration of David Goodwin. Goodwin Decl., Exs. 1–3. Plaintiffs respectfully submit that the multifaceted, comprehensive notice plan developed by the Settlement Administrator provides the best notice practicable under the facts and circumstances of this case and fully satisfies due process requirements. Settlement Class Counsel request that the Court approve the proposed form and manner of notice to the Settlement Class as provided in the Notice Plan.

### ii. The settlement class satisfies the requirements for class certification at the settlement stage.

In addition to the analysis above, it is also necessary for the Court to preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met, and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses

12

of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, Rule 23(b) provides, in relevant part, that a class action may be maintained if:

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs have the burden of demonstrating that all of the applicable requirements of Rule 23 are met. *In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *see also Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is there be no trial," but it must still ensure satisfaction with other Rule 23 requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class satisfies each of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and of Rule 23(b)(3) (predominance and superiority).

### 1. The settlement satisfies Rule 23(a).

#### a. The settlement class is sufficiently numerous.

To satisfy the numerosity requirement, "a plaintiff need not present a precise calculation of the number of class members, [rather] it is permissible for [a] court to rely on reasonable inferences drawn from available facts." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y.

13

2012). Further, many courts recognize that numerosity is satisfied at forty or more members. *See Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 242 (D. Minn. 2020) ("Generally, a putative class size of forty or more will support a finding of numerosity, although smaller classes have been found acceptable in this circuit."); *Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 508 (E.D. Ark. 2009) (noting that class numbers in the forty-or-more range should have a reasonable chance of success on the basis of number alone).

The Settlement Class contains over 58,500 members. Moreover, the Settlement Class Members are geographically dispersed making joinder impracticable. As such, the Settlement Class clearly satisfies the numerosity requirement.

### b. There are issues of law and fact common to the class.

To certify the Settlement Class, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established where a class-wide proceeding may "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis omitted). "The commonality requirement has been characterized as a low hurdle easily surmounted." *Evans & Green, LLP v. Mortg. Depot, LLC*, No. 07-3275-CV-S-RED, 2008 WL 11338123, at *1 (W.D. Mo. May 28, 2008) (quotations and citation omitted). Indeed, "even a single common question will do." *Dukes*, 564 U.S. at 350 (quotations omitted); *Abarca v. Werner Enters., Inc.*, No. 8:14-CV-319, 2018 WL 1136061, at *9 (D. Neb. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1392909 (D. Neb. Mar. 20, 2018) (same).

Here, Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once.

14

### c. Plaintiffs' claims are typical to the class's claims.

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is "not demanding and focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Komoroski v. Util. Serv. Partners Priv. Label, Inc.*, No. 4:16-cv-00294, 2017 WL 3261030, at *5 (W.D. Mo. July 31, 2017) (quotations and citation omitted); *DeBoer*, 64 F.3d at 1174 ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Here, the claims all involve Defendant's conduct toward the Settlement Class members, and Plaintiffs' and the Class's claims are based on the same legal theories and are centered around the same Data Incident. Thus, Plaintiffs' claims are typical of those of the claims of the Settlement Class, and they are appropriate Settlement Class Representatives. *See Komoroski*, 2017 WL 3261030, at *5.

### d. Plaintiffs and Plaintiffs' Counsel will fairly and adequately represent the interests of the Class.

The requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 594; *see Komoroski*, 2017 WL 3261030, at *6 (stating that "to satisfy Rule 23(a)(4)'s typicality requirement, the named plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members" (quotations and citation omitted)).

The Class Representatives have no conflicts with the Settlement Class, have participated actively in the case, and are represented by attorneys experienced in class action litigation, including data breach cases. Goodwin Decl. at ¶¶ 6, 17.

15

Plaintiffs' Counsel have significant experience in data breach class and complex litigation and are actively participating as Plaintiffs' counsel in several data breach class actions in state and federal courts around the country. Goodwin Decl., Exs. 5–6 (Class Counsel's law firm biographies). Gustafson Gluek PLLC, and Hellmuth & Johnson PLLC are nationally recognized law firms within the field of complex data breach class action litigation. *Id.* Each firm is well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. *Id.* Thus, Plaintiffs' counsel is unquestionably qualified to undertake this litigation. *Komoroski*, 2017 WL 32160130, at *6 ("Absent evidence to the contrary, the court assumes class counsel is adequate.").

### 2. Certification under Rule 23(b)(3) is appropriate.

Certification is appropriate under Rule 23(b)(3) when common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591–94. These requirements are satisfied in this case.

#### a. Common questions of law and fact predominate.

The United States Supreme Court has described the predominance inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 622. This is satisfied where the issues that are capable of proof by generalized evidence "are more substantial than the issues subject only to individual proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). As the Second Circuit stated:

> [S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is

16

>manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried. Conversely, other inquiries assumed heightened importance and heightened security because of the danger of conflicts, collusion, and unfair allocation.

*Id.* at 239 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011)).

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the core of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b. A class is the superior method of adjudicating this case.

The second prong of Rule 23(b) is satisfied by the proposed Settlement. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted); *accord In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 239. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent

rulings. Because this action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial.

Thus, the Court may certify the Class pursuant to Rule 23(b)(3) as well.

### III.     Conclusion

For these reasons, Class Counsel respectfully ask the Court to enter an Order: (1) certifying the Class for purposes of settlement; (2) appointing Plaintiffs as representative of the Settlement Class; (3) appointing the undersigned counsel as Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of notice to the Class; (6) directing that the notice to the Class be disseminated by Settlement Administrator, Analytics, in the manner described in the Settlement and in the Analytics Declaration; (7) establishing a deadline for Settlement Class Members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the Final Approval Hearing. A proposed Order Granting Preliminary Approval will be provided to Chambers.

December 18, 2024                         */s/ David A. Goodwin*
                                          **GUSTAFSON GLUEK PLLC**
                                          Daniel E. Gustafson
                                          David A. Goodwin
                                          Daniel J. Nordin
                                          Joe E. Nelson
                                          Canadian Pacific Plaza
                                          120 South 6th Street, Suite 2600
                                          Minneapolis, MN 55402
                                          Phone: (612) 333-8844
                                          *dgustafson@gustafsongluek.com*
                                          *dgoodwin@gustafsongluek.com*
                                          *dnordin@gustafsongluek.com*
                                          *jnelson@gustafsongluek.com*

**HELLMUTH & JOHNSON PLLC**
Nathan D. Prosser
8050 West 78th Street
Edina, MN 55439
Phone: (952) 941-4005
*nprosser@hjlawfirm.com*

***Interim Co-Lead Plaintiffs' Counsel***