# EXHIBIT 4

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Settlement Agreement")[1] is entered into by and between (i) Defendant Brady, Martz & Associates, P.C. ("Brady Martz" or "Defendant") and (ii) Plaintiffs Jason Quaife, John Hoffer, Amanda Koffler, Alec R. Kiesow, and Samantha Stock (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of the Settlement Class, in the case of *In re Brady Martz Data Security Litigation*; Case No. 3:23-cv-00176-PDW-ARS (D.N.D.). Brady Martz and Plaintiffs are each referred to individually as a "Party" and are collectively referred to herein as the "Parties."

This Settlement Agreement is subject to Court approval and is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (defined below), upon and subject to the terms and conditions thereof.

### I.    THE ACTION

Plaintiffs allege that on November 19, 2022, Defendant noticed unusual activity on its networks and retained an independent cybersecurity specialist to investigate. Plaintiffs further allege an unauthorized third party accessed  Defendant's information systems and databases and stole Plaintiffs' and putative class members' Personal Identifying Information and Private Health Information ("Private Information").[2] On September 8, 2023, Brady Martz sent a notice letter to those individuals whose information may have been accessed in the Data Incident. The specific information alleged to have been involved in the Data Incident includes full names, addresses,

---

[1] All capitalized terms herein shall have the same meanings as those terms are defined in this Settlement Agreement. *See* § IV.

[2] Plaintiffs' Consolidated Class Action Complaint alleges that approximately 53,524 individuals' information was exfiltrated as part of the Data Incident (ECF. No. 15, ¶ 4), but subsequent investigation revealed approximately 58,500 individuals' Private Information may have been affected.

telephone numbers, Social Security numbers, dates of birth, driver's license numbers, medical information, and financial account/payment card information.

On September 15, 2023, Plaintiff Jason Quaife filed the initial putative class action complaint against Brady Martz in the United States District Court for the District of North Dakota.[3] Shortly thereafter three additional putative class action complaints[4] were also filed in the United States District Court for the District of North Dakota alleging common questions of law and fact related to the Data Incident. Plaintiffs moved to consolidate the matters and on October 19, 2023, the Court issued an order consolidating the matters and directed the clerk to designate the first filed case as the docket to file all future pleadings in and captioned the consolidated matters as *In re Brady Martz Data Security Litigation*, No. 3:23-cv-176 ("Action"). On October 24, 2023 the Court issued an order appointing Nathan D. Prosser of Hellmuth & Johnson PLLC and David A. Goodwin of Gustafson Gluek PLLC as interim co-lead counsel and Scott Haider of the Schneider Law Firm as interim liaison counsel.

A consolidated amended complaint was filed on November 20, 2023, on behalf of all named plaintiffs from the four pending matters. On December 18, 2023, Defendant subsequently moved to dismiss the consolidated amended complaint allegations pursuant to Fed. R. Civ. P. 12(b)(1) and 12 (b)(6). Plaintiffs fully opposed Defendant's motion and the Court issued its order on May 22, 2024, granting in part and denying in part Brady Martz's motion. Brady Martz filed its answer and affirmative defenses to Plaintiffs' consolidated amended complaint on June 5, 2024.

Simultaneously while litigating the case, in November 2023, the Parties began to engage

---

[3] *Quaife v. Brady Martz & Associates, P.C.*, Case No. 3:23-cv-176 (D.N.D.).

[4] *Hoffer v. Brady Martz & Associates, P.C.*, Case No. 3:23-cv-177, (D.N.D.); *Koffler v. Brady Martz & Associates, P.C.*, Case No. 3:23-cv-183 (D.N.D.); and *Kiesow v. Brady Martz & Associates, P.C.*, Case No. 3:23-cv-184 (D.N.D.).

in discussions regarding possible early resolution, which last for over 11 months of intense good faith, arms'-length negotiations between the Parties and their respective experienced counsel. During portions of the negotiation period, the Parties continued to litigate the dispute as evidenced by Brady Martz's filing of a motion to dismiss and the Parties' service of discovery requests. During the settlement negotiation, the Parties also engaged in informal discovery. On October 15, 2024, the Parties' extended settlement negotiations resulted in an agreement in principle to settle the Action. This agreement and its terms are memorialized in this Settlement Agreement.

## II.    CLAIMS OF PLAINTIFF AND THE BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Action, as set forth in their class action complaint, have merit.   Plaintiffs and Proposed Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Brady Martz through discovery, motion practice, trial, and potential appeals. Plaintiffs have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Proposed Settlement Class Counsel is highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Action. Proposed Settlement Class Counsel believes that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Brady Martz denies each and all of the claims and contentions alleged in the Action. Brady Martz denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Action. Nonetheless, Brady Martz has concluded that further litigation of the Action would be

protracted, uncertain, risky, and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individual and on behalf of the Settlement Class, and Brady Martz that, subject to the approval of the Court, the Action and Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice as to the Parties and the Participating Settlement Class Members, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

1. **Definitions**

The following terms have the meaning specified below:

1.1 "Action" means the class action lawsuit captioned *In re Brady Martz Data Security Litigation*, Case No. 3:23-cv-00176-PDW-ARS, currently pending in the United States District Court, District of North Dakota.

1.2 "Agreement" or "Settlement" means this Settlement Agreement.

1.3 "Application for Attorneys' Fees, Costs, and Service Award" means the application made seeking Class Counsel's award of attorneys' fees and reimbursement for costs, as well as a Service Award for Plaintiffs acting as a Class Representative, which shall be filed at least fourteen (14) days before the Opt-Out and Objection Date.

1.4 "Claims Administration" means the review, processing and payment of claims received from Participating Settlement Class Members by the Settlement Administrator.

1.5 "Claim" means a claim for settlement benefits made by a Participating Settlement

4

Class Member.

      1.6 "Claims Deadline" means the postmark and/or online deadline for the submission of Claim Forms, which is 90 days after the Notice Date.

      1.7 "Claim Form" means the form, substantially similar to **Exhibit 3** attached hereto, to be utilized by the Settlement Class to submit a Claim for benefits under the Settlement.

      1.8 "Class List" means a list of members of the Settlement Class, including names and postal addresses. Brady Martz shall provide the Class List to the Settlement Administrator for Notice. The Class List may consist of information previously used to notify the Settlement Class of the Data Incident and consists of approximately 58,500 individuals.

      1.9 "Class Counsel" and "Proposed Settlement Class Counsel" means Nathan D. Prosser of Hellmuth & Johnson PLLC and David A. Goodwin of Gustafson Gluek PLLC.

      1.10    "Complaint" means the Consolidated Class Action Complaint filed on November 20, 2023. (ECF No. 15).

      1.11    "Court" means the United States District Court, District of North Dakota.

      1.12    "Cy Pres Designee" means an entity mutually agreed upon by the Parties and submitted to the Court in a subsequent filing who may receive unclaimed residual settlement funds, as set forth in ¶ 8.6, subject to approval by the Court.

      1.13    "Data Incident" means the data security incident that occurred on or about November 19, 2022, affecting Brady Martz and, potentially, Settlement Class Members' Private Information.

      1.14    "Defendant" or "Brady Martz" means Brady Martz & Associations, P.C. and excludes current employees, shareholders, and immediate family members.

      1.15    "Defendant's Counsel" means Lewis Brisbois Bisgaard and Smith LLP.

1.16    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.18 and 9.1 have occurred and been met.

1.17    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of litigation costs to be awarded by the Court to Proposed Settlement Class Counsel.

1.18    "Final" means the occurrence of all of the following events: (i) the Settlement is finally approved by the Court and the Court enters the Final Approval Order; (ii) the Court has entered a Judgment, whether included in the Final Approval Order or separately entered; and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance becomes no longer subject to further appeal or review. Notwithstanding the above, any order declining, reducing or otherwise modifying the Fee Award and Costs and/or Service Award sought through the Application for Attorneys' Fees, Costs, and Service Award, or order reversing or otherwise modifying a Fee Award and Costs and/or Service Award shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.19    "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

1.20    "Final Approval Hearing" means the hearing to be held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Award, which the Parties shall ask the Court to put on the calendar at least 150 days following entry of the Preliminary Approval Order.

6

1.21     "Final Approval Order" means the order finally approving the Settlement, which may also include a Judgment dismissing the Action.

1.22     "Judgment" means the judgment rendered by the Court granting Final Approval and commencing the time for filing a notice of appeal. The Judgment will be part of the Final Approval Order or may be entered by the Court separately.

1.23     "Long Notice" means the long form Notice of the Settlement posted on the Settlement Website, and available in hard copy upon request to the Settlement Administrator, substantially in the form as shown in **Exhibit 2** hereto.

1.24     "Motion for Final Approval" means the motion that Plaintiffs and Proposed Settlement Class Counsel shall file with the Court seeking Final Approval of the Settlement.

1.25     "Motion for Preliminary Approval" means the motion that Plaintiffs and Proposed Settlement Class shall file with the Court seeking Preliminary Approval of the Settlement.

1.26     "Net Settlement Fund" refers to the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for the payment from the Settlement Fund for (i) the Costs of Settlement Administration Costs; (ii) Taxes and Tax-Related Expenses; (iii) Service Award; and (iv) Attorneys' Fee Award and Costs.

1.27     "Notice" means the mailed Postcard Notice via regular U.S. Mail, which includes a tear off claim form with pre-paid postage, and Long Notice that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

1.28     "Notice Date" means the date of the Administrator mailing of the Postcard Notice for purposes of calculating the Opt-Out and Objection Deadline, and all other deadlines that flow from the Notice commencement date, which shall complete the Notice Deadline.

1.29    "Notice Deadline" means 30 days after entry of the Preliminary Approval Order.

1.30    "Notice Program" means the methods provided for in this Settlement Agreement for giving Notice to the Settlement Class, and may consist of Postcard Notice through the Unites States Postal Service (USPS), Email Notice and Long Notice through email and the Settlement Website.

1.31    "Opt-Out and Objection Deadline" means the date that is 60 days following the Notice Date. The postmark date shall constitute evidence of the date of mailing or emailing for these purposes.

1.32    "Opt-Out and Objection Report" means a report of all opt-outs and objections that have been timely and validly submitted.

1.33    "Participating Settlement Class Members" means a member of the Settlement Class who has not opted-out of the Settlement. Plaintiffs are Participating Settlement Class Members.

1.34    "Party" means Plaintiffs and Defendant, and "Parties" means Plaintiffs and Defendant, collectively.

1.35    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.36    "Plaintiffs" or "Representative Plaintiffs" or "Class Representatives" means collectively Jason Quaife, John Hoffer, Amanda Koffler, Alec R. Kiesow, and Samantha Stock.

1.37     "Plaintiffs' Counsel" means Hellmuth & Johnson PLLC, 8050 West 78th Street, Edina, Minnesota 55439 and Gustafson Gluek PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402.

1.38     "Postcard Notice" means the postcard notice of the Settlement substantially in the form attached hereto as **Exhibit 1**.

1.39     "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order.

1.40     "Preliminary Approval Order" means the order preliminarily approving the Settlement, including but not limited to the proposed Notice Program.

1.41     "Private Information" or "PI" means, but is not limited to, individual names, addresses, dates of birth, Social Security numbers, and any other types of personally identifiable information collected or maintained by Brady Martz and potentially impacted in the Data Incident that is the subject of this Action.

1.42     "Released Claims" shall collectively mean any and all past, present, and future claims, lawsuits, petitions, cause of action, and other legal proceedings including, but not limited to, any causes of action or legal proceeding arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, or other U.S. political subdivision, including but not limited to 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; violations of any state data protection statutes and other common law causes of action including, but not limited to, negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; and/or failure to provide

9

adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, consequential damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by Plaintiffs or any other Participating Settlement Class Member against any of the Released Parties based on, concerning or arising out of the Data Incident or the allegations, occurrences, operative facts, or circumstances alleged in or otherwise described in the Complaint or otherwise asserted in the Action. Released Claims include Unknown Claims (defined below). Released Claims shall not include the right of any Participating Settlement Class Member, Class Counsel, Defendant or any other Released Parties to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of members of the Settlement Class who have timely and validly opted-out of the Settlement pursuant to the terms hereof.

   1.43  "Released Parties" means Brady Martz and its respective past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of Brady Martz's and those Persons' respective predecessors, successors, directors, officers, owners, assigns, transferees, shareholders, members, partners, principals, agents, attorneys, employees, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in this Action, other than any Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to that charge.

1.44    "Releasors" or "Releasor" means the Participating Settlement Class Members, including Plaintiffs, and each of those Persons' respective predecessors, successors, heirs, executors, administrators, and assigns, and anyone claiming by, through, or on their behalf.

1.45    "Service Award" means the payment of $2,000 to each Class Representative, which the Court may award the Plaintiffs for serving as Class Representatives.

1.46    "Settlement Administrator" means Analytics Consulting LLC ("Analytics"), a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach class action litigation.

1.47    "Settlement Administration Costs" means all costs associated with settlement administration, including, but not limited to the costs of notice to the Settlement Class, notice pursuant to the Class Action Fairness Act ("CAFA"), and Claims Administration.

1.48    "Settlement Class" means all individuals in the United States who were sent a notification letter regarding the Data Incident Brady Martz discovered in November 2022. Excluded from the Settlement Class are Brady Martz, the Judge assigned to the Action, and that Judge's immediate family and Court staff, and also Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

1.49    "Settlement Distribution" means the process by which the Settlement Administrator will disburse the Net Settlement Fund to Settlement Class Members.

1.50    "Settlement Fund" means the sum of Eight Hundred Fifty Thousand Dollars ($850,000) paid by or on behalf of Brady Martz, as specified in ¶ 2.1 Beyond the Settlement Fund, Brady Martz shall have no obligation or liability to make further payments or other monetary contributions as part of this Settlement, whether to Plaintiff, other Participating Settlement Class Members, or Class Counsel.

1.51     "Settlement Payment" means any payment to be made to any Settlement Class Member who submits a valid and timely Claim Form.

1.52     "Settlement Website" means the website the Settlement Administrator will establish (www.BradyMartzDataSettlement.com), as a means for the members of the Settlement Class to submit Claim Forms and obtain notice and information about the settlement.

1.53     "Tax and Tax-Related Expenses" means any and all appliable taxes, duties, and similar charges imposed by any government authority, arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect to the Settlement Fund.

1.54     "Unclaimed Funds" means the sum of the Net Settlement Fund that remain after the payment of the Settlement Administrator Costs, Service Awards, Attorney Fee Award and Costs, Taxes and Tax-Related Expenses, and after the expiration of checks issued to Settlement Class Members who submitted a valid and timely Claim Form for Documented or Attested to Loss Payments, and/or Cash Awards, and any Subsequent Settlement Payment.

1.55     "Unknown Claims" means any Released Claims that any Participating Settlement Class Member, including Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Claims of Brady Martz and the other Released Parties that, if known by him or her, might have affected his or her settlement with, and release of, Brady Martz and the Released Parties, or might have affected his or her decision not to object to and/or to participate in this Settlement. With respect to the Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs intends to and expressly shall have, and each of the other Participating Settlement Class Members intends to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and all provisions, rights, and benefits conferred by any law of any

12

state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80 et seq., Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Participating Settlement Class Members, including Plaintiffs, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs expressly shall have, and each other Participating Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, voluntarily, and forever settled and released any and all Released Claims. The Parties acknowledge, and Participating Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement of which this release is a part.

### 2. Participating Settlement Class Member Benefits

2.1    The Settlement Fund.

> i. Within fourteen (14) days of the Effective Date and on receipt of the Settlement Administrator's verified transfer instructions and Form W-9, Brady Martz shall deposit or cause to be deposited the Settlement Fund of Eight Hundred Fifty Thousand Dollars ($850,000) into an interest-bearing account established and administered by the Settlement Administrator.

Brady Martz may deposit or cause to be deposited the Settlement Funds sooner if it so chooses.

ii. The Settlement Fund is the limit and extent of Brady Martz's monetary obligations pursuant to this Agreement and settlement of the Action.

iii. Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. Funds may be placed in a noninterest-bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

iv. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay the following: (a) Settlement Administration Costs; (b) Taxes and Tax-Related Expenses; (c) Service Awards; (d) Attorney Fee Award and Costs; and (e) the Settlement Benefits elected by Participating Settlement Class Members who submit valid and timely Claims pursuant to the terms of this Settlement.

14

2.2 <u>Settlement Benefits.</u> Each Participating Settlement Class Member who submits a valid and timely claim form may qualify for the following benefits. The cost of providing the benefits shall be provided from the Net Settlement Fund.

a.  <u>Cash Award</u>. Participating Settlement Class Members who submit a valid and timely Claim Form may receive a payment (a "Cash Award") of $75 (subject to a pro rata increase or decrease) and may also submit a claim for a Loss Time Award or Documented Loss Payment Award. The amount of the Cash Award will be calculated in accordance with ¶ 2.3(c) below after all Documented Loss Payments and Loss Time Awards are paid from the Net Settlement Fund.

b. <u>Ordinary Losses</u>. Participating Settlement Class Members who submit a valid and timely Claim Form may receive compensation for unreimbursed losses up to a total of $250 per person, between Out-of-pocket Expenses and a Loss Time Award, upon submission of a claim and supporting documentation or sworn attestation, such as the following categories of claimed losses:

i.    <u>Out-of-pocket Expenses</u>. Participating Settlement Class Members who submit a valid and timely Claim Form may elect to receive expenses incurred as a result of the Data Incident ("Out-of-pocket Expenses") including bank fees, long distance phone charges, cell phone charges, data charges, postage, or gasoline for local travel, all of which must be fairly traceable to the Data Incident, and must not have been previously reimbursed by a third party, and that are supported by documentation or sworn attestation that substantiate the full extent of the amount claimed;

15

ii.    <u>Lost Time</u>. Participating Settlement Class Members who submit a valid and timely Claim Form may also elect to receive a payment (a "Loss Time Award") of up to $100 for reimbursement time expended mitigating the effects of the Data Incident. The Claim Form will allow for the Participating Settlement Class Member to select between 1-4 hours of loss time to the nearest hour, reimbursable up to $25 per hour. The amount of the Lost Time Award will be calculated in accordance with ¶ 2.3(b) below.

c. <u>Extraordinary Losses - Documented Loss Payment</u>. In the event a Participating Settlement Class Member does not elect Ordinary Losses as set forth in ¶ 2.2(b) above, the Participating Settlement Class Member may instead submit a claim for a Settlement Payment of up to $5,000 for reimbursement of extraordinary losses ("Documented Loss Payment"). To receive a Documented Loss Payment, a Settlement Class Member must submit to the Settlement Administrator; (a) a valid Claim Form electing to receive the Documented Ordinary Loss Payment; (b) an attestation regarding any actual and unreimbursed documented losses, which are described as, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees; fees for credit repair services; costs associated with freezing or unfreezing credit with a reporting agency; and credit monitoring costs incurred on or after the Data Incident through the date of claim submission; and (c) reasonable and adequate documentation that clearly establishes the amount of the loss and that the Documented Loss is reimbursable pursuant to the terms of the Settlement. The loss must be more likely than not

caused by the Data Incident and not already included in Ordinary Loss reimbursement. The Participating Class Member must have made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. Furthermore, supporting documentation for the amounts of Documented Loss that is submitted must not be "self-prepared" by the claimant or on his/her behalf. Self-prepared and handwritten receipts are, by themselves, insufficient to receive a Document Loss Payment, but may be considered to add clarity or support to other submitted documentation.

The amount of the Documented Loss Payment will be calculated in accordance with ¶ 2.3(a) below.

2.3     Settlement Funds Distribution.

a.   The Settlement Administrator will first apply the Net Settlement Fund to pay all Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied shall be referred to as the "Post Documented Loss Payment Net Settlement Fund."

b.   The Settlement Administrator shall utilize the Post Documented Loss Net Settlement Fund to next make all Ordinary Losses Award payments of between $0 - $100 for loss time and up to $250 total for Ordinary Losses pursuant to ¶ 2.2(b). The amount of the Post Documented Loss Payment Net Settlement Fund remaining after all Documented Loss Payments are paid and all Loss Time Payments are paid will be referred to as the "Final Net Settlement Fund."

     c.   The Settlement Administrator shall utilize the Final Net Settlement Fund to pay all Cash Award payments in a pro rata manner with all amounts remaining in the Final Net Settlement Fund.

2.4 <u>Confirmatory Discovery</u>. Brady Martz has provided or will provide reasonable access to confirmatory discovery for a period of 30 days from the execution of this Agreement by Defendant on establishing the appropriateness of settlement terms as contemplated under Fed. R. Civ. P. 23(b)(1), including but not limited to the facts and circumstances of the Data Incident and Brady Martz's response thereto to the extent not previously produced to Plaintiff.

2.5 <u>Settlement Expenses</u>. All costs for notice to the Settlement Class as required under this Settlement, and Settlement Administrator Costs shall be paid from the Settlement Fund.

2.6 <u>Settlement Class Certification</u>. The Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the Settlement set forth in this Agreement is not approved by the Court, or if the Agreement is terminated or cancelled pursuant to its terms, this Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any Party's position on the issue of class certification or any other issue in the Action. The Parties agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

### 3. **Preliminary Approval Order and Notice**

3.1.    Preliminary and Final Approval of the settlement Agreement shall be sought in the United States District Court, District of North Dakota.

3.2     Class Counsel shall submit this Agreement to the Court with the Motion for
Preliminary Approval requesting entry of a Preliminary Approval Order ordering, inter alia:

      a.      Conditional certification of the Settlement Class for settlement purposes
only;

      b.      Preliminary Approval of the Settlement;

      c.      Appointment of Class Counsel;

      d.      Appointment of Plaintiffs as Class Representatives;

      e.      Approval of the Notice Program and Notices, including as to objections and
opt-outs;

      f.      Approval of the Claim Form and Claims process;

      g.      Appointment of Analytics as the Settlement Administrator; and

      h.      Scheduling Final Approval Hearing, to include the date, time and location
thereof.

The Postcard Notice, Long Notice, and Claim Form may be revised, without Court
approval, in immaterial ways vis-à-vis the Preliminary Approval Order, as agreed upon by the
Parties and the Settlement Administrator. Any changes to the Preliminary Approval Order,
Postcard Notice, Long Notice, and Claim Form that do not materially affect the substance of the
Settlement required by the Court will not invalidate this Agreement.

3.3     The cost of providing Notice to the Settlement Class in accordance with the
Preliminary Approval Order, together with Settlement Administration Costs, shall be paid from
the Settlement Fund. The Fee Award and Costs for Settlement Class Counsel, and Service Award
to Representative Plaintiffs, as approved by the Court, shall also be paid from the Settlement Fund.
Notice shall be provided to the Settlement Class by the Settlement Administrator as follows:

a.   *Settlement Class Information*: Within 10 days of entry of Preliminary Approval Order, Brady Martz shall provide the Settlement Administrator with the Class List.

b.   The Class List and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the Settlement as provided in this Agreement, or to provide all data and information in its possession to the Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class List.

c.   Settlement Website: Prior to the dissemination of the Postcard Notice and Email Notice, the Settlement Administrator shall establish the Settlement Website and shall be responsible for maintaining and updating the Settlement Website through the Claims period and until at least 120 days following Final Approval. The Settlement Website shall inform members of the Settlement Class of the terms of the Settlement, their rights (including to object or opt-out), and relevant dates, deadlines and other related Settlement information. The Settlement Website shall include the following: (i) Long Notice; (ii) Claim Form; (iii) Motion for Preliminary Approval and Preliminary Approval Order; (iv) Settlement Agreement; (v) Complaint; (vi) Application for Attorneys' Fees, Costs, and Service Award; (vii) Motion for Final Approval; and (viii) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide members of the Settlement Class with the ability to complete and submit the Claim Form, and supporting documentation, electronically.

20

d.    *Postcard Notice*: By no later than the Notice Deadline, subject to the requirements of this Agreement and the Preliminary Approval Order, the Settlement Administrator shall provide Notice to the members of the Settlement Class as follows:

- by placing into the USPS by no later than the Notice Deadline a postcard with a tear off claim with business reply mail postage, to each Settlement Class member, whose mailing address was identified by the Class List. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of members of the Settlement Class through the USPS National Change of Address database to update any change of address on file with the USPS within 21 days of entry of the Preliminary Approval Order;

- in the event that a Postcard Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is not valid, and the Postcard contains a forwarding address, the Settlement Administrator shall re-send the Postcard Notice to the forwarding address;

- in the event that subsequent to the first mailing of the Postcard Notice, and at least 14 days prior to the Opt-Out and Objection Deadline, a Postcard Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, i.e. the Notice is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that it customarily performs skip traces, in an effort to attempt to ascertain the

current address of the particular member of the Settlement Class in question and, if such an address is ascertained, the Settlement Administrator will re-send the Postcard Notice within 7 days of receiving such information.

e.      *Toll-free Telephone*: A toll-free telephone line shall be made available to provide members of the Settlement Class with additional information about the Settlement and to respond to questions from members of the Settlement Class. The Settlement Administrator shall also maintain a P.O. Box and email address where members of the Settlement Class may send documents or ask questions. The Settlement Administrator will also provide copies of the Long Notice and Claim Form, as well as the Agreement, upon request to members of the Settlement Class; and

f.      Contemporaneously with seeking Final Approval of the Settlement, Class Counsel shall cause to be filed with the Court a declaration with respect to the Notice Program and the Claims process.

g.      The Postcard Notice, Long Notice, Claim Form and other applicable communications to the Settlement Class may be adjusted by the Settlement Administrator, respectively, in consultation and agreement with the Parties, as may be reasonable and not inconsistent with the Preliminary Approval Order.

h.      Within 10 business days following the Court's entry of the Preliminary Approval Order and pursuant thereto, the Settlement Administrator, on behalf of the Defendant, shall cause a CAFA notice to be served upon the appropriate State and Federal officials, with notice paid from the Settlement Fund.

3.4      The Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order.

### 4.   Exclusion / Opt-Out Procedures

4.1    Each member of the Settlement Class wishing to opt-out of the Settlement shall individually sign and timely submit written notice of such intent to the designated P.O. Box established by the Settlement Administrator, which shall include:

a.  the name of the Action: *In re Brady Martz Data Security Litigation*, Case No. 3:23-cv-00176-PDW-ARS;

b.  full name of the member of the Settlement Class;

c.  current address of the member of the Settlement Class;

d.  Claim number or other unique Settlement Class member ID assigned to the Settlement Class member, included in the Postcard Notice sent to the individual;

e.  signature of the member of the Settlement Class; and

f.  the words "Request for Exclusion" or a similar, unambiguous statement that the member of the Settlement Class does not wish to participate in the Settlement or be bound by the terms of the Settlement.

4.2    Opt-outs must be submitted individually, and no mass or automated opt-outs shall be accepted. The written notice must clearly manifest the intent of a member of the Settlement Class to be excluded from the Settlement Class. To be effective, written notice must be postmarked no later than the Opt-out and Objection Deadline, which shall be sixty (60) days from the date on which the Notice Program commences.

4.3    All members of the Settlement Class who submit valid and timely notices of their intent to opt-out from the Settlement Class shall not receive any benefit or be bound by the terms of the Agreement. All Participating Settlement Class Members who do not opt out shall be bound by the terms of this Agreement and Judgement entered thereon.

23

4.4    The Settlement Administrator shall distribute the Opt-Out and Objection Report to the Parties within 10 days after the Opt-Out and Objection Deadline.

**5.  Objections Procedures**

5.1    Each Participating Settlement Class Member desiring to object to the Settlement in writing shall submit a timely written notice of his or her objections by the Opt-Out and Objection Deadline. Such notice shall state: (i) the objector's full name, mailing address, telephone number, and e-mail address; (ii) information identifying the objector as a Participating Settlement Class Member (e.g., copy of Postcard Notice received, copy of original notice of the Data Incident received, or claim number or other unique Settlement Class member ID assigned to the Settlement Class member and included in the Postcard Notice sent to the individual); (iii) a written statement of all grounds for the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or, if applicable, their counsel intends to appear at the Final Approval Hearing; (vi) the objector's written or electronic signature and, if represented by counsel, the objector's counsel's written or electronic signature. To be properly submitted, written notice of an objection in the appropriate form must be sent to the Administrator at the mailing or email address identified in the Long Form Notice and the settlement Website. A copy of all objections will be filed with the Court as part of the Motion for Final Approval.

5.2    Any Participating Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement and shall be bound by all the terms of the Settlement and by all proceedings, orders and judgments in the Action. Whether Participating Settlement Class Members submit a written objection or not, they may attend the Final Approval Hearing. At

the Court's discretion, attending Participating Settlement Class Members may address the Court concerning the Settlement. Without limiting the foregoing, any challenge to the Final Approval Order, or the Judgment to be entered upon Final Approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

### 6. **Releases**

6.1     Upon the Effective Date, the Releasors shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims, including Unknown Claims, as against Defendant and other Released Parties. Further, upon the Effective Date, and to the fullest extent permitted by law, each Participating Settlement Class Member, including Plaintiffs, shall either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined form commencing an action, prosecuting an action, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims are asserted against any of the Released Parties.

6.2     Upon the Effective Date, Brady Martz shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiffs, each and all of the Participating Settlement Class Members, and Class Counsel, of all claims based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action and Brady Martz further agrees to not act against any Plaintiff, Participating Settlement Class Members, or Class Counsel with the intent to harm, damage, or limit any of their lawful rights or legal privileges base on their participation in this Settlement. Notwithstanding the above, any other claims or defenses Brady Martz may have against the Plaintiffs, Participating Settlement Class Members, and Class Counsel not based upon or arising out of the institution,

prosecution, assertion, settlement, or resolution of the Action, are specifically preserved and shall not be affected by the preceding sentence.

6.3    Nothing in this Section 6 shall preclude any action to enforce the terms of this Settlement Agreement by Participating Settlement Class Members, Class Counsel, or the Released Parties.

## 7.    Settlement Class Counsel's Attorneys' Fees, Costs, and Service Award

7.1    Proposed Settlement Class Counsel may file a motion for the Fee Award and Costs to be paid from the Settlement Fund. The motion shall be filed at least fourteen (14) days before the Opt-Out and Objection Date. Prior to the disbursement of the Fee Award and Costs under this Agreement, Class Counsel shall provide the Settlement Administrator a properly complete and duly executed IRS form W-9.

7.2    Proposed Settlement Class Counsel will seek, and Brady Martz has agreed not to oppose, an order from the Court awarding up to one-third (33.33%) of the Settlement Fund ($283,333.33) to Proposed Settlement Class Counsel for attorneys' fees, in addition to the costs and expenses incurred in connection with the prosecution of this matter. Class Counsel currently estimates costs and expenses to not exceed five-thousand dollars ($5,000).

7.3    Unless otherwise ordered by the Court, Proposed Settlement Class Counsel shall have the sole and absolute discretion to allocate any approval Fee Award and Costs among Plaintiffs' Counsel. Defendant shall have no liability or responsibility for said allocation.

7.4    Proposed Settlement Class Counsel will seek, and Brady Martz has agreed not to oppose, an order from the court awarding two thousand dollars ($2,000) in Service Awards to each of the Class Representatives, to be paid from the Settlement Fund totaling ten thousand dollars ($10,000).

26

7.5     If awarded by the Court, the Settlement Administrator shall pay the Fee Award and Costs, and Service Awards to Plaintiffs, as set forth in ¶¶ 7.2, 7.3, and 7.4, within thirty (30) days after the Effective Date. The Service Award to Class Representatives, Fee Award and Costs will be wired to Proposed Settlement Class Counsel, who shall thereafter distribute the Fee Award and Costs among Plaintiffs' Counsel and Service Award to Plaintiffs consistent with ¶¶ 7.2, 7.3, and 7.4. Defendant shall have no liability or responsibility for said distribution.

7.6     The amount(s) of any award of Fee Award and Costs, and Service Awards to Plaintiffs is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein, except as set forth in ¶¶ 7.2, 7.4, and 7.5. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Fee Award and Costs, and/or Service Award shall affect whether the Judgment is Final or constitutes grounds for cancellation or termination of this Settlement Agreement.

**8.  Administration of Claims**

8.1     Claim Form submission

a.      Claim Period: The Parties agree that the period for filing claims shall be set at a date certain 90 days from the Notice Date.

b.      Claim Form: All claims must be submitted on a Claim Form. The Claim Form will be required for the Settlement Class Member to provide his/her Claim.

c.      The Claim Form must be submitted (either postmarked or electronically) on or before the Claims Deadline.

27

d.      Any Claim Form that lacks the requisite information will be deemed to be incomplete and may be ineligible for payment.

8.2     The Settlement Administrator shall administer and calculate the Claims submitted by Participating Settlement Class Members. The Settlement Administrator shall administer the Settlement Fund and Unclaimed Funds. The Notices provided to Settlement Class Members shall require them to indicate their preferred disbursement methods and provide the required financial and contact information. The Settlement Administrator shall maintain any private information received from the Settlement Class in a secure, encrypted environment.

8.3     For each Participating Settlement Class Member form which the Settlement Administrator receives a valid, completed and timely Claim Form with correct information, the Settlement Administrator shall disburse any monies due to the Participating Settlement Class Member (i.e., the "Settlement Payment") using the Settlement Class Member's preferred payment method within thirty (30) days from the Effective Date. The Settlement Administrator may reject as invalid, without further action, Claims received by anyone other than Settlement Class Members. The Settlement Administrator shall provide Settlement Class Members who have submitted invalid Claims an opportunity to cure pursuant to a cure process to be devised and memorialized in writing by the Settlement Administrator and approved by the Parties. The cure process shall conclude no later than the Effective Date.

8.4     Participating Settlement Class Members who do not provide their preferred method of electronic disbursement for monetary benefits or do not provide valid mailing addresses for purposes of check receipt of monetary benefits shall be deemed to have forfeited their Claim. Such Participating Settlement Class Members will remain in the Settlement and be bound by its terms, including releases, and the Judgment.

28

8.5     All Settlement Payments issued to Settlement Class Members via check will state on the face of the check that it will expire and become null and void unless cashed within ninety (90) days after the date of issuance (the "Check Void Date"). If a Settlement Class Member requests their Settlement Payment via check and the check is not cashed within ninety (90) days, the Settlement Class Member shall be deemed to have forfeited their Settlement Payment. Such Participating Settlement Class Members will remain in the Settlement and be bound by its terms, including releases, and the Judgment.

8.6     To the extent any monies remain in the Net Settlement Fund more than one hundred fifty (150) days after the last distribution of Settlement Payments to Participating Settlement Class Members, such monies shall be distributed to the Cy Pres Designee. The Settlement Administrator shall distribute Settlement Payments within thirty (30) days of the Effective Date.

8.7     Proposed Settlement Class Counsel and Defendant's Counsel shall be given reports by the Settlement Administrator summarizing the individual Claims by, and proposed distributions to, Participating Settlement Class Members within 7 days of the Effective Date. Proposed Settlement Class Counsel and Defendant's Counsel shall have the right to obtain supporting documentation for any Claims and challenge proposed distributions or rejection of Claims identified in the reports, with such challenges to be submitted and resolved with the Settlement Administrator within 21 days of the Effective Date.

8.8     All Participating Settlement Class Members who fail to timely submit a Claim within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the Settlement, but will in all other respects be subject to, and bound by the Settlement Agreement, including the releases and the Judgment.

29

9. **Conditions of Settlement**

9.1    If the Effective Date does not occur or the Preliminary Approval Order is not entered substantially in the form proposed, the Settlement Agreement shall be cancelled and terminated subject to ¶ 9.3 unless Proposed Settlement Class Counsel and Defendant's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.2    Within ten (10) days of the Opt-Out and Objection Deadline, the Settlement Administrator shall furnish to Proposed Settlement Class Counsel and to Defendant's Counsel the Opt-Out and Objection Report.

9.3    In the event that the Settlement or the releases therein are not approved by the Court or the Settlement set forth in the Agreement is terminated in accordance with its terms: (i) the Parties shall be restored to their respective positions in the Action and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; (ii) the terms and provisions of the Settlement shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in the Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees and costs shall constitute grounds for cancellation or termination of the Settlement. Further, notwithstanding any statement in the Agreement to the contrary, Brady Martz shall be obligated to pay amounts already reasonably billed or incurred as of the date of Agreement termination for costs of Notice to the Settlement Class, and Claims Administration, and shall not, excepting bad faith acts, seek recovery of same from any Party or that Party's counsel.

**10. Miscellaneous**

10.1    The Parties (i) acknowledge that it is their intent to consummate this Settlement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement; and (iii) agree to exercise their best efforts to accomplish the terms and conditions of this Settlement.

10.2    The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement compromises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties each agree that the Settlement was negotiated in good faith by the Parties at arm's length and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Action, except as set forth in the Agreement.

10.3    Neither the Agreement, nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Agreement and/or the Judgment in any action related to the Data Incident that may be brought against them, individually or collectively, to support a defense or counterclaim based on principles of res judicata, collateral

31

estoppel, release, good faith settlement, judgment bar, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.5    The Agreement contains the entire understanding between Brady Martz and Plaintiffs regarding the Action and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Brady Martz and Plaintiffs, including between their respective counsel, in connection with the Action. Except as otherwise provided herein, each Party shall bear its own costs.

10.6    Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement and to ensure fairness to the Settlement Class.

10.7    Each counsel or other Person executing the Agreement on behalf of any Party warrants that such Person has the full authority to do so.

10.8    The Agreement may be executed in one or more counterparts. All executed counterparts shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court when filing for Preliminary Approval.

10.9    The Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties. No assignment of this Agreement will be valid without the other Party's prior, written permission.

10.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

10.11   All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

This Settlement Agreement shall be deemed executed as of the date that the last party signatory signs the Agreement.

**[SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JASON QUAIFE, individually and as Class Representative

Signature: _____

Date: _____ 12 / 16 / 2024 _____


JOHN HOFFER, individually and as Class Representative

Signature: _____

Date: _____


AMANDA KOFFLER, individually and as Class Representative

Signature: _____

Date: _____


ALEC R. KIESOW, individually and as Class Representative

Signature: _____

Date: _____


SAMANTHA STOCK, individually and as Class Representative

Signature: _____

Date: _____


HELLMUTH & JOHNSON, PLLC, as Class Counsel

By: _____

Print Name: _____

Date: _____

34

Doc ID: 6e1e69731735895d5f07094d324db3561a9b7149

Docusign Envelope ID: E6ECE094-083D-40D1-A1B8-BC2E52EC99EE

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JASON QUAIFE, individually and as Class Representative

Signature: _____

Date: _____

JOHN HOFFER, individually and as Class Representative

Signature: *John Hoffer*
46626AB1B2C041B...

Date: 12/16/2024 _____

AMANDA KOFFLER, individually and as Class Representative

Signature: _____

Date: _____

ALEC R. KIESOW, individually and as Class Representative

Signature: _____

Date: _____

SAMANTHA STOCK, individually and as Class Representative

Signature: _____

Date: _____

HELLMUTH & JOHNSON, PLLC, as Class Counsel

By: _____

Print Name: _____

Date: _____

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JASON QUAIFE, individually and as Class Representative

Signature: _____

Date: _____

JOHN HOFFER, individually and as Class Representative

Signature: _____

Date: _____

AMANDA KOEFLER, individually and as Class Representative

Signature: _____

Date: ___12/17/2024_____

ALEC R. KIESOW, individually and as Class Representative

Signature: _____

Date: _____

SAMANTHA STOCK, individually and as Class Representative

Signature: _____

Date: _____

HELLMUTH & JOHNSON, PLLC, as Class Counsel

By: _____

Print Name: _____

Date: _____

34

Docusign Envelope ID: D166A4FA-5404-4B2C-ADB3-5BB07D20DA20

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JASON QUAIFE, individually and as Class Representative

Signature: _____

Date: _____

JOHN HOFFER, individually and as Class Representative

Signature: _____

Date: _____

AMANDA KOFFLER, individually and as Class Representative

Signature: _____

Date: _____

ALEC R. KIESOW, individually and as Class Representative

Signature: _____

Date: _____12/17/2024 | 6:32 PM PST_____

SAMANTHA STOCK, individually and as Class Representative

Signature: _____

Date: _____

HELLMUTH & JOHNSON, PLLC, as Class Counsel

By: _____

Print Name: _____

Date: _____

34

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JASON QUAIFE, individually and as Class Representative

Signature: _____

Date: _____

JOHN HOFFER, individually and as Class Representative

Signature: _____

Date: _____

AMANDA KOFFLER, individually and as Class Representative

Signature: _____

Date: _____

ALEC R. KIESOW, individually and as Class Representative

Signature: _____

Date: _____

SAMANTHA STOCK, individually and as Class Representative

Signature: _____

Date: _____12 / 16 / 2024_____

HELLMUTH & JOHNSON, PLLC, as Class Counsel

By: _____

Print Name: _____

Date: _____

34

Doc ID: d7ee1f6a7afe66a0d3d1d869191fbaededc16deb

**IN WITNESS HEREOF**, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

JASON QUAIFE, individually and as Class Representative

Signature: _____

Date: _____

JOHN HOFFER, individually and as Class Representative

Signature: _____

Date: _____

AMANDA KOFFLER, individually and as Class Representative

Signature: _____

Date: _____

ALEC R. KIESOW, individually and as Class Representative

Signature: _____

Date: _____

SAMANTHA STOCK, individually and as Class Representative

Signature: _____

Date: _____

HELLMUTH & JOHNSON, PLLC, as Class Counsel

By: _____

Print Name: __NATHAN PROSSER__

Date: __12-17-24__

34

GUSTAFSON GLUEK, PLLC, as Class Counsel

By: _____

Print Name: David Goodwin

Date: 12/18/24

BRADY MARTZ & ASSOCIATES, P.C.

By: _____

Print Name: _____

Title: _____

Date: _____

GUSTAFSON GLUEK, PLLC, as Class Counsel

By: _____

Print Name: _____

Date: _____

BRADY MARTZ & ASSOCIATES, P.C.

By: _~Stacy DuToit~_____

Print Name: _Stacy DuToit_____

Title: _CEO / President_____

Date: _12/16/2024_____

## SETTLEMENT TIMELINE

| **Grant of Preliminary Approval** | |
|---|---|
| Brady Martz provides list of Settlement Class Members to the Settlement Administrator | + 10 days |
| Long Form and Short Form Notices Posted on the Settlement Website | +30 days |
| Notice Deadline – commencement | +30 days |
| Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Incentive Award | +76 days |
| Optional Reminder Notice – Email Only | +100 days |
| Objection Deadline | +90 days |
| Exclusion Deadline | +90 days |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | +110 days |
| Claims Deadline | +120 days |
| | |
| **Final Approval Hearing** | +150 (at minimum) |
| Motion for Final Approval | -14 days |
| | |
| | |
| **Grant of Final Approval** | |
| Settlement Administrator provides W-9 to Brady Martz | +10 days |
| Effective Date | +30 days |
| Payment of Attorneys' Fees and Expenses and Service  Awards by Settlement Administrator | +42 days |
| Settlement Website Deactivation | +120 days |